GREGORY v. COHEN & SONS.

1. APPEAL—LAW CASE—SUPREME COURT.—Where a law case is referred by consent, the report of the referee may be excepted to, and affirmed, reversed or modified by Circuit Judge, but his findings of fact cannot be reviewed by this Court.

2. DAMAGES—THE CONTRACT in this case could be terminated by either party at will, and the defendant was not liable to plaintiff for damages for its breach.

3. CONTRACT.—Under facts found by the Circuit Judge, plaintiff has no cause of action for further commissions.

4. COUNTER-CLAIM—LAW CASE.—In a law case where issues are referred by consent, judgment may be given on unliquidated counter-claim as by default, when not replied to by defendant.

5. THE JUDGMENT for defendant was not for possession of property in hands of Court by attachment, but on a cause of action which arose prior to the commencement of this action.

Before ALDRICH, J., Chesterfield, September, 1896.  Affirmed.

Action by T. S. Gregory against E. Cohen & Sons. The referee, to whom all issues were referred, filed the following report:

This was an action at law by plaintiff for a balance of commissions due him, as he alleged, from defendants, and for damage for violation of contract.  It was referred to me, by consent of all parties, by his Honor, R. C. Watts, presiding Judge, at the February term of this Court.  After considering fully the evidence, I am satisfied that the contract between plaintiff and defendant was to run for one year.  The written instructions given to plaintiff, such as they were, bore date August 5th, 1895, and, therefore, the

contract would end August 4th, 1896. Plaintiff also stated that all solvent orders were to be filled, and he was to get four per cent. commission on the same. The defendants claimed the right to determine the question of what orders they would or would not fill, and that it was on such as they filled that plaintiff was to get commissions. This would subject plaintiff to the danger of having all ,his orders turned down if goods were advancing, and working for nothing, at the mere caprice of the defendants, and is not reasonable, when we remember that plaintiff sold out his entire business and left everything to take this work up. It is not reasonable that a sensible man would make such a one-sided arrangement, and after carefully weighing the question, I have come to the conclusion the contract was, as alleged by the plaintiff, that his commissions were to be paid on orders that were good; in other words, from people who stood well in the commercial world, had good credit, and men worthy of credit. Now, there is one class of orders which there can be no dispute about as to commissions, and that is, the orders from parties whose other orders were filled, or part of whose orders, sent at the same time, were filled. By filling their orders, or part of them, defendants admitted that they came in the terms of plaintiff's agreement and were solvent. Plaintiff kept his duplicates of orders, and the original orders were put in evidence. Defendants testify, in a sweeping way, that they were all filled, but their letters show that they left out parts of certain orders. This raises a conflict with themselves as to the filling of the orders, and plaintiff gives us in his evidence what they left out. I find that they left out of orders goods amounting to $900.82. Now, as to orders not filled at all, plaintiff claimed that H. W. Finlayson's order couldn't be turned down, for the reason that they had filled a former order of Mr. Finlayson's only a short time before, and could not now be heard to say he was not solvent. Then there are the orders of A. S. Douglas, W. N. Ratliff and Miss Stakely. The evidence satisfies me that their

commercial standing is good, and that plaintiff derived
information of those facts from the most reliable sources
accessible.   It is urged that his knowledge was derived
from hearsay.   That is peculiarly characteristic of all such
knowledge, and if defendants had any knowledge regarding
these parties, it was derived in the same way.   But plain-
tiff.also went into their places of business, saw their stock,
saw their trade being carried on, and in one instance saw
orders given to a wholesale man on good terms.   In addi-
tion to that, W. N. Ratliff offered to pay cash.   This is
proven conclusively.   And here I wish to notice the state-
ment of Eleazer Cohen in answer to question 38.   He says:
"A number of the parties from whom he obtained orders
we found, on making the usual investigations, were very
undesirable as credit risks, but to those parties we in every
case tendered the goods ordered for cash."   Mr. W. N.
Ratliff, who happened to do business in the town where
this reference was held, was called in, and he and his sales-
man contradict this statement as to his order.   It is abun-
dantly proven that he was ready and anxious to get the
goods and pay cash for them, and defendants were notified
of that fact.   This is one of the circumstances that weak-
ens my faith in the testimony offered by defendants.   It is
asked why the defendants desired to turn down good sol-
vent orders.   The reply seems to be that goods of that
class were advancing rapidly at that time, and by the time
an order reached Baltimore, sold at plaintiff's limits, the
goods had advanced, so that there was no profit in it.   This
is shown by the almost daily instructions sent plaintiff to
change his quotations, and also a letter written on the 19th
October, in which, in explanation of their course, they
close by the suggestive words, "Goods are advancing too
fast;" and from the evidence, this appears to have been the
trouble.   I conclude, therefore, that plaintiff was entitled
to commissions on the orders of persons being solvent,
according to the proof here, to the amount of $926.65;
amount from the partially unfilled orders, $900.82; total,

$1,827.47; four per cent. commissions on $1,827.47, $73.09. Plaintiff, in the stating of his cause of action, however, only asked for $50.56, being under the erroneous impression that that covered the amount of his commissions still due, and defendants, after the beginning of the action, paid him $2.05, leaving $48.51 still due on this cause of action, and I find that he is entitled to that amount on the first cause of action.

Having found, as a matter of fact, that the contract was for a year, and it being admitted that defendants terminated it, the question of what damage, if any, the plaintiff suffered * * * Defendants say they turned him off on account of the unsatisfactory character of the orders (see E. Cohen's deposition), but this couldn't well have been, for they claimed the exclusive right to turn any order down, and exercised it, too, in this case, in defiance of plaintiff's rights. But why they turned him off is not the question; he did not break the contract and they did, and should make him whole, if he suffered thereby. He sold out his business and went on the road at his own expense on an uncertainty, and started a trade, and they, without legal excuse, turned him adrift at the end of two months. The measure of damages is hard to determine in a case like this. What would it have been worth to him, is the question. In the two months or more he traveled, from August 10, when he opened up, till October 17, when he was finally ordered to stop, he had earned commissions amounting to $125.78. The trade was established, and the entire round was made, as far as the referee can ascertain from the evidence, consisting of the letters put in evidence by both parties, in about twenty days' travel, the balance of time being spent at his home, so that the useless trips could be avoided, the canvass of the field would consume about twenty days, and plaintiff says it cost $5 a day. The net earnings, then, would be about $25 for two months, or $12.50 per month, over and above expenses, if plaintiff had not increased his trade. There were ex-

actly nine and one-half months of the contract to run, and
I think the damages would, therefore, be $118.75. This
the plaintiff should recover on his second cause of action.

The trunk and samples referred to in defendants' an-
swer belong to them, of course, but the record shows they
are in the hands of this Court, being attached by the sheriff,
and, therefore, plaintiff is not liable for damages for them,
but, on dissolution of this attachment or payment of this
judgment, they are entitled to their property. Plaintiff
expended $230 in going to Baltimore and making his
various trips under this contract, and claimed that as the
measure of his damages, but I think otherwise and find
accordingly.

The Circuit decree is as follows:

This is an action at law, but a trial by jury was waived,
and by consent it was referred to a referee to take the testi-
mony, except that taken by commission; and determine the
issues. The report of the referee, including the testimony,
now comes before this Court upon the exceptions of the
defendants thereto. The exceptions are very numerous,
and as they question every decision of the referee, I may as
well treat the case upon its merits and consider all of the
issues; but the exceptions must be read as a part of this
order. The plaintiff is a resident of this State and county,
and served the defendants, partners in trade, doing business
in the city of Baltimore, Md., as a salesman or drummer to
solicit and take orders for goods for said firm. The first
and most natural issue to be determined is the duration of
the contract between the plaintiff and defendants. Plain-
tiff, in his complaint, alleges that said contract was to "run
for one year from date." Defendants, in their answer, by
their general denial, deny this allegation. The contract
was not reduced to writing, and must be determined from
the testimony. There is testimony direct and indirect
bearing upon this issue. Plaintiff testified that the con-
tract was to run for a year. E. Cohen, one of the defend-

ants, and the one who made the contract with the plaintiff, and the book-keeper of the defendants, B. J. Nolan, who says he heard the contract made, testify that the contract was "to run for no specified time, and to be terminated at the will of either party." The burden of proof is upon the plaintiff. A drummer is "an agent who simply exhibits samples of goods kept for sale by his principal, and takes orders from purchasers of such goods, which are afterwards to be delivered by the principal to the purchasers, and payment for such goods is to be made by the purchaser to the principal." Enc. of Law, vol. 3, p. 315. Outside of any direct evidence to the contrary, an employee who is hired at a yearly rate is presumed to be hired for a year; at a daily, for a day; and by piece work, for no specified time. Enc. of Law, vol. 14, p. 762.

From the pleadings and the evidence, it is clear that plaintiff's contract contemplated no hiring for a year or a day, but, on the contrary, he was to be paid for his services a commission of four per cent. on all orders obtained—sent in, &c. I am now considering the question of consideration of the contracting and not its terms as to other matters to be yet considered. The testimony in this case is very voluminous, including a great number of letters, and it is hardly necessary to consider them in detail. I conclude, and so hold, that the contract herein could be terminated at the will of either party. Having held that the consideration of plaintiff was a commission on his orders, &c., it is not essential to ascertain the exact date upon which the contract began and ended; but plaintiff began to work about August 10, 1895, and from time to time continued to, or up to, about October 17th, 1895. The plaintiff obtained and forwarded to defendants orders for goods, amounting in the aggregate, as claimed by plaintiff, to $2,500 or more; some of these orders were accepted and filled by defendants, other orders were accepted and filled only in part, that is, certain items therein were sold to purchasers, while other items were not sold; some orders were

refused or rejected by defendants in toto, and some of the orders were countermanded by the persons who gave them. Plaintiff's commissions on all goods sold and shipped under his orders have been paid. As to orders countermanded, there is no issue. The referee held, and correctly, that plaintiff was not entitled to commissions on the same, and no exception was taken thereto.

The next issue is, what were the terms of the contract? Plaintiff alleges that he was to be paid commissions on "all orders from solvent parties, or all orders from firms or persons of good commercial standing." Defendants allege that the contract was, that they were to pay plaintiff commissions "on all orders taken by plaintiff which were approved and accepted by the defendants." The referee finds in favor of the plaintiff. I cannot concur in this conclusion. I do not think that it is sustained by the testimony, especially when the burden of proof is upon the plaintiff. It is not only, in my opinion, unsupported by the evidence, but it is unsupported by all the circumstances surrounding the case, and the very nature of the transactions. As to the right of the defendants to approve and accept certain items in an order, while other items were rejected, it is sufficient to say that this was done with the knowledge of the plaintiff, and, so far as I can see, he made no objections thereto. Again, if plaintiff had objected to the action of defendants in this respect, it was incumbent upon him to prove that defendants had said rejected items in stock, and that he had complied with their directions in taking said orders. Letter after letter discloses the fact that plaintiff was constantly instructed as to the prices at which he was to sell goods (and that these prices varied constantly, conforming to market prices), and was frequently directed by defendants to withdraw from sale various articles, because "same were not in stock." Defendants gave plaintiff other instructions—for example, relating to the prepayment of freight, discounts, &c.—which I need not refer to.

The defendants, in their answer, seek to recover of plain-

tiff, by way of counter-claim, $30, the value of a trunk and samples furnished by defendants to plaintiff to be used in their business. Plaintiff failed to reply to said counter-claim, and defendants demand judgment thereon. In addition to the fact that plaintiff failed to reply to said counter-claim, the evidence shows that said trunk and samples were not upon demand returned by plaintiff to defendants, and that the same were worth $30. At the beginning of this action plaintiff sued out a writ of attachment · in the usual form against the property of defendants in this county and State, naming especially a debt to become due by H. W. Finlayson to these defendants; said warrant was served upon said Finlayson, and perhaps other persons. The return shows that it was served upon the plaintiff himself, attaching "one sample trunk and one salesman's order book."

Wherefore, it is ordered, adjudged and decreed: 1. That the exceptions of the defendants, so far as the same have been considered, be and are hereby sustained. 2. That the report and findings of the referee herein be and hereby are reversed. 3. That the complaint herein be and hereby is dismissed with costs and disbursements, to be taxed by the clerk of this court. 4. That the writ of attachment herein and attachments thereunder be and hereby are vacated and set aside and discharged. 5. That the defendants have judgment against the plaintiff for the sum of $30.

The plaintiff appeals on following exceptions:

1. Because the Court erred in holding, as matter of law, that the defendants had a right to accept orders and fill part of them only, without paying plaintiff commissions on the whole orders.

2. Because the Court erred in holding that plaintiff was not entitled to commissions on the whole of the orders accepted, even if defendants only filled part of them.

3. Because the Court should have allowed plaintiff commissions on all orders accepted by defendants, on the whole amount of said orders, whether they were filled in full or not.

4. Because the Court erred in holding that the burden of proof was on the plaintiff to show that the defendants had the items left out of bills accepted in stock when they were ordered.

5. Because the Court erred in not holding, as matter of law, that when defendants accepted bill or order, they were liable to plaintiff for commissions thereon on the full amount of the bill, unless they could show that the plaintiff had misrepresented the purchaser's standing, and they had been misled thereby.

6. Because the Court erred in not holding that the burden was on the defendants to show such facts as would exempt them from paying commissions on all orders accepted, whether filled in full or not.

7. Because the Court erred in holding that plaintiff's knowledge of the fact that defendants were filling only part of the orders accepted, was sufficient answer to the objection raised by him to their refusal to pay him commissions on parts omitted from all of said orders.

8. Because the Court erred in giving judgment for the sample case against the plaintiff, when the evidence and record showed that the property was in the hands of the Court.

9. Because the Court erred in holding that property in the hands of the Court could be sued for and recovered in this case.

*Mr. W. F. Stevenson,* for appellant, cites: *Must pay commissions on all orders:* 44 S. C., 248; 13 Bush. (Ky.), 358; 21 Am. Rep., 192; 45 Am. Rep., 447. *Counter-claim:* Code, 175, 267.

*Mr. R. T. Caston,* contra, cites: *This Court cannot review findings of fact in law case:* 45 S. C., 503; 47 S. C., 347; 23 S. C., 1, 25; 26 S. C., 480. *Counter-claim:* Code, 267; 46 S. C., 202; 30 S. C., 115.

Sept. 30, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   For a full understanding of this case, it will be necessary for the reporter to set out in his report of the case, a copy of the referee's report, to whom it was referred by consent of the parties, to hear and determine all the issues in the case, together with the decree of the Circuit Judge and the exceptions thereto.   From these papers it will be seen that this was an action at law, pure and simple, brought by the plaintiff to recover from defendants the amount of a balance alleged to be due him for commissions on sales and orders taken by him for goods, as a salesman or drummer, and also to recover damages for breach of the contract by defendants under which he was employed.   It is well settled that, while the findings of fact, as well as of law, by a referee, in a case of this kind, may be affirmed, modified or reversed by the Circuit Judge upon exceptions to the referee's report, this Court has no power to review the conclusions of fact by the Circuit Judge in a law case, for the obvious reason that the jurisdiction of the Supreme Court is limited by the Constitution to the correction of errors of law, and can only review findings of fact in chancery cases. *Meetze* v. *R. R. Company*, 23 S. C., 1, and *Griffith* y. *R. R. Co.*, 23 S. C., 25.   This being so, many, if not all, of the questions presented by this appeal are beyond our jurisdiction, and we are compelled to adopt the findings of fact by the Circuit Judge.   Indeed, even if we had the power to do so, inasmuch as the testimony is not set out in the "Case," we would be unable to determine whether the referee or the Circuit Judge was right in the views which they respectively took of the testimony.

The contract upon which plaintiff relies not being in writing, its terms must be determined by the testimony in the case; and the Circuit Judge having found that the contract was not for a year, but was for no specified time, and could be terminated at the will of either party, there was, therefore, no breach of the contract on the part of defendants in terminating it in October,

1895, and hence no ground for plaintiff's second cause of action. Indeed, we do not understand that plaintiff questions this by any of his exceptions, as he manifestly could not do, under the finding of fact by the Circuit Judge.

The next inquiry is, upon what orders was the plaintiff entitled to commissions under the terms of the contract? The plaintiff claimed, and the referee so found, that he was entitled to commissions on all orders taken from solvent parties; whereas the Circuit Judge found that the terms of the contract were that plaintiff should be entitled to commissions "on all orders taken by plaintiff which were approved and accepted by the defendants." This also presents a question of fact, and we are bound to accept the conclusion adopted by the Circuit Judge. If so, then clearly the defendants were not liable to pay commissions on any order which was not accepted or approved by them; and the further fact found by the Circuit Judge, that "plaintiff's commissions on all goods sold and shipped under his orders have been paid," shows that plaintiff has no cause of action for any other commissions. The fact that some of the orders sent in by plaintiff were only partially filled, cannot help the plaintiff; for, besides what is said by the Circuit Judge upon this point, showing that by the testimony this was done by the implied assent of the plaintiff, if the contract was, as found by the Circuit Judge, that commissions were to be paid only on such orders as were *approved* and accepted; of course, the defendants might approve a part and reject another part of such orders, especially where it appears from the testimony, as stated by the Circuit Judge, that plaintiff was continually receiving letters from defendants instructing him as to the prices at which he was to sell, which prices were varying constantly according to the market, and also to withdraw certain goods from sale, as the "same were not in stock," together with other instructions as to prepayment of freight, discounts to be allowed for cash, &c.

The only remaining inquiry is, as to whether there was

error in allowing the defendants judgment for their counter-claim against the plaintiff. It will be observed from the answer that this counter-claim was not for the recovery of the possession of the trunk and the lot of samples, but for the recovery of damages to the amount of $30, for refusing to deliver defendants' property upon demand, therefor. This counter-claim not having been replied to by plaintiff, the defendants were entitled to judgment thereon, as by default—sec. 175 of the Code. But as the claim was for unliquidated damages, ordinarily the damages would have to be ascertained by the verdict of a jury—sec. 267 of Code—this not being a case in chancery. But the parties having waived the right to a trial by jury by consenting to have all the issues tried by a referee, such consent involves a consent to all the necessary incidents to such a trial, one of which is, that the report of the referee can be excepted to and reviewed by the Circuit Court, and upon such review that the findings of the referee, both of law and fact, may be reversed, affirmed or modified. *Meetze* v. *Railroad Company*, 23 S. C., at page 25. And inasmuch as the Circuit Judge stated in his decree that "the evidence shows that said trunk and samples were not, upon demand, returned by plaintiff to defendants, and that the same were worth $30," we see no error in rendering judgment against plaintiff for that amount.

The plaintiff's 8th and 9th exceptions cannot be sustained; for, in the first place, the demand was not for the recovery of the possession of the property attached, but for damages for refusing to return defendant's property upon demand. This demand was made before this action was commenced, and, of course, before the attachment was issued; and the defendant's cause of action asserted by the counter-claim arose before the action was commenced and before the said property was seized under the attachment. It is a mistake to suppose, as asserted in the 9th exception, that the Circuit Judge held "that property in the hands of the Court could be sued for and recovered in this case," for

there is no such holding in the decree of the Circuit Judge; on the contrary, the Circuit Judge, after rendering judgment that the complaint be dismissed and the attachment vacated, then proceeds to render judgment—not for the recovery of any specific property, but simply for damages under a cause of action arising before this action was commenced and before any attachment was, or could have been, issued.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.