16758

TURNER v. CAREY

(76 S. E. (2d) 671)

*Messrs. S. R. Watt* and *T. Sam Means, Jr.,* of Spartanburg, *for Appellant,*

*Mr. E. W. Johnson,* of Spartanburg, *for Respondent,*

July 2, 1953.

TAYLOR, Justice.

This appeal arises out of an action for fraud and misrepresentation commenced by respondent in the Court of Common Pleas for Spartanburg County.

The complaint alleges in substance that respondent purchased a new brick-crete house from appellant, that the said house was defective in certain particulars, and that the appel-

lant, owner-builder, had fraudulently misrepresented the house in effecting the sale. It alleged respondent's ability to reconvey the premises to appellant and sought to recover payments and expenditures made on the premises and to have cancelled the evidences of indebtedness and actual and punitive damages in the sum of $10,000.00.

Appellant interposed a general denial and the matter came on to be heard before the Honorable Steve C. Griffith, presiding Judge, and a jury. At the close of the testimony, the jury viewed the house, both inside and out, and after being instructed by the trial Judge, rendered the following verdict: "We the jury found for defendant not guilty." Respondent made seasonable motion for a new trial and the presiding Judge after hearing oral argument and viewing the premises with consent of counsel for both sides issued the following Order on May 5, 1952, granting the motion to set aside the verdict and ordering a new trial:

"Upon hearing arguments on plaintiff's motion for a new trial, I stated that I did not feel that I would be justified in granting a new trial on the two specific legal grounds set forth in the motion and invited argument on the ground that the facts of the case, and furtherance of justice, require a new trial. And at the conclusion of the arguments I asked both parties to file memorandums and arguments, which has been done and which have been very helpful. After careful consideration of the matter I have reached the conclusion that I should deny the motion on the legal grounds but that I should grant the motion on the ground that the verdict is contrary to the evidence and the greater weight thereof. I am advertant to the principal that a verdict of a jury should not be lightly set aside on the ground that it is contrary to the weight of the evidence, and, too, in a proper case, it is a responsibility that a Trial Judge must assume. *Wood v. Atlanta & C. Air Line Ry. Co.*, 19 S. C. 579.

"In this case, the jury deliberated for some time, and it looked as if a mistrial would result. The issue of fraud was

involved which is always more or less confusing to a jury. The jury finally returned a verdict of 'not guilty'.

"A great many of the facts are not in dispute. On the purchase of an $11,000.00 home the plaintiff paid on the purchase price, on improving it and other items of expense, sums totaling in the neighborhood of $5,700.00. It was a new house, built by defendant, a dealer in real estate, for sale to the public. There is very little difference in plaintiff's and defendant's testimony as to the representations made by the defendant prior to the sale as to the house being well constructed both in materials and workmanship. Plaintiff claims that the house did not come up to defendant's representations, in that it leaked through the walls, and on this point there was a conflict of testimony. But I am convinced that it weighs heavily in favor of the plaintiff.

"Returning again to the undisputed facts, the plaintiff reported to the defendant that the house leaked. The defendant in turn caused to go to this home a Mr. Long, by reason of his furnishing materials for the home. Mr. Long, after examination of the home, did some work on it and while working on it he was quoted by the plaintiff's wife as stating in substance that the house had not been properly built. Mr. Long was identified by the defendant's witnesses as a man of the highest integrity. He was in Court during the trial of this case and knew more about the condition of the home and what was causing the leaks, if any, than any other person. The defendant did not place him on the stand and I think it fair to apply the usual presumption that if he had testified, his testimony would not have been favorable to the defendant.

"But even if that is not true, there are other facts that convince me that the house did in fact leak. An inspection of the house from the outside convinced me that considerable work has been done and it was testified that Mr. Long did work on the outside. The spots on the outside walls clearly indicate that considerable work was done over them.

"In addition, the plaintiff's testimony and his conduct are convincing. Even after the defective condition in the

house occurred, he continued to make payments, apparently hoping that the defendant would correct the condition. Finally he employed his present attorney, laid the matter before him, in which he stated in substance that he knew not what to do, as the defective condition of the house had not been corrected and he felt that he had put into the house more than it was worth in that condition; and on the other hand he owed more than it was worth. After consulting his attorney he discontinued making payments and this suit followed.

"The plaintiff, following the engagement of his attorney, discontinued making any payments on the two mortgages covering the property, which he had given to the defendant as a portion of the purchase price. One of the mortgages had been assigned by the defendant to a bank; the other, a second mortgage, was retained by the defendant. Shortly after plaintiff commenced this action the bank commenced foreclosure proceedings on the mortgage held by it, making the defendant and plaintiff parties, and the defendant asked for foreclosure of his second mortgage. Plaintiff sought to have the action in foreclosure consolidated with this action, and this relief was denied him. The foreclosure proceeding resulted in a decree of foreclosure and sale, and the property was sold by the Master in August, 1951, for $6,250.00, just about enough to pay the first mortgage and the expenses of foreclosure. The defendant's son was the purchaser at this sale. The defendant in that foreclosure proceeding obtained a deficiency judgment in excess of $1,100-.00 on his second mortgage. The Master, a member of this Bar of the highest integrity, testified that in recent years property sold by him had been bringing good prices and the bidding had been competitive.

"There are certain facts that are obviously true, one being that the plaintiff has suffered a substantial loss. Before stopping his payments he had reached almost the halfway mark in the purchase of a new home. He has now lost that home, and not only has failed to get any of his money back, but

still has a deficiency judgment against him. How is this explained?

"First explanation of it is that the house didn't leak and the plaintiff's business became bad and he was unable to make the payments. But that position is not at all convincing to me. Why did the plaintiff report the house to be leaking in the first place? That was a long time before any default was made in his payments. In fact, plaintiff kept up with his payments until his lawyer advised him to discontinue them. And right here I should say that I have no doubt of the plaintiff's testimony in that respect. His attorney's high professional standing assures me that he would not have permitted the plaintiff to have made any misstatement of fact in his testimony in that regard.

"Furthermore, if the house didn't leak, why did Mr. Long work on it? While working on it why did he make the statement he was quoted as having made to the plaintiff's wife? Why didn't the defendant put Mr. Long on the stand if there was nothing wrong with the house? If the house was all right, and plaintiff was hard pressed to meet the payments, why didn't plaintiff resell it? Would not his attorney have so advised?

"The defendant also contends that regardless of the results he has not been guilty of any fraud. Judge Greneker, in passing upon the demurrer in this case, held that proof of misrepresentation would entitle the plaintiff to actual damages. Defendant during this trial acknowledges the correctness of this principle by asking for a directed verdict as to punitive damages. I so charged the jury, but apparently it was not clear, as the verdict of 'not guilty' implies.

"But in addition, I think the evidence amply justified a finding of fraud. The defendant is a dealer in real estate and the plaintiff has had no experience therein. The parties were not dealing on equal terms, and did not have equal means of information. *Ruberg v. Brown,* 50 S. C. 397 [27 S. E. 873]. The house was built of new material, and it was natural that plaintiff would want information about it.

Defendant claimed to have followed closely the construction work, and was able to speak with authority as to the manner of construction, while a stranger, especially a person of no experience, would have no knowledge thereabout. The defendant made representations which he should have known to have been untrue, unless he made them recklessly, which has the same effect.

"Furthermore, defendant's later conduct does not look good. He is perfectly willing to hold to the advantage that he has acquired. The house upon being taken back was purchased by his son and the defendant holds even to the deficiency judgment. For the reasons stated a new trial is granted, * * *."

Appellant now comes to this Court upon exceptions presenting a number of questions for consideration by this Court, but we are of the opinion that the affirmance or reversal of this case rests upon determination of the one question of whether or not the trial Judge committed error of law in his Order granting a new trial.

It is well settled in this state that an Order granting or refusing a new trial when based solely on an error of law is subject to review by this Court, but when the Order is based upon questions of fact, or upon both questions of law and fact, it is not appealable. *Daughty v. Northwestern R. Co.*, 92 S. C. 361, 75 S. E. 553; *Ingram v. Hines, Director General*, 126 S. C. 509, 120 S. E. 493; *Snipes v. Davis, Director General*, 131 S. C. 298, 127 S. E. 447; *Walker v. Quinn*, 134 S. C. 510, 133 S. E. 444; *King v. Western Union Tel. Co. et al.*, 167 S. C. 500, 166 S. E. 629; *O'Barr v. Pioneer Life Ins. Co.*, 172 S. C. 72, 172 S. E. 769; *Marsh v. Pioneer-Pyramid Life Ins. Co.*, 174 S. C. 59, 176 S. E. 878; *Morrison v. South Carolina State Highway Department*, 181 S. C. 258, 187 S. E. 344. In *Marshall v. Charleston & S. Ry. Co.*, 57 S. C. 138, 35 S. E. 497, the Court said: "The well-settled rule is that this court cannot review an order refusing or granting a new trial except for error of law, as the court is without jurisdiction to review

the judgment of the circuit court on question of fact." The following from *Massey v. Adams,* 3 S. C. 254, has been frequently quoted with approval: "The only question proper for our consideration, is whether there was error of law in the order granting the new trial. If it was founded, either wholly or in part, on a conclusion from the fact contrary to that of the jury, then according to the well-established principles governing the Court in regard to appeals, in which propositions of law do not arise, we cannot interfere." In dismissing an appeal from an Order granting a new trial, the Court in *Bowman v. Harby,* 109 S. C. 396, 96 S. E. 144, said: "It is too plain for discussion that, under our decisions, the order is not appealable, because the new trial was not granted solely upon a question of law, but involved a consideration of the facts and the conduct of the trial." *Sellars v. Collins,* 212 S. C. 26, 46 S. E. (2d) 176.

It is unnecessary to reiterate or comment further upon the foregoing Order other than to say it is in detail and beyond question based solely on the facts of the case as stated in the first paragraph thereof: "After careful consideration of the matter I have reached the conclusion that I should deny the motion on the legal grounds but that I should grant the motion on the ground that the verdict is contrary to the evidence and the greater weight thereof."

We are of the opinion that the Order being based upon the facts of the case, all exceptions should be dismissed and the Order appealed from affirmed.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.