17008

S. E. TURNER, Respondent, v. P. A. CAREY, Appellant
(87 S. E. (2d) 871)

contract.

*Messrs. S. R. Watt* and *T. Sam Means, Jr.,* of Spartanburg, *for Appellant*

E. W. Johnson, Esq., of Spartanburg, *for Respondent,*

June 1, 1955.

OXNER, Justice.

On June 3, 1948, appellant, P. A. Carey, Sr., sold to respondent, S. E. Turner, a house and lot near the City of Spartanburg for $11,000.00. Turner assumed a mortgage for $6,000.00 held by the Citizens and Southern National Bank, gave a second mortgage to Carey for $2,000.00, and paid the balance of $3,000.00 in cash. The mortgage held by the bank was payable in monthly installments of $62.18. The $2,000.00 mortgage held by Carey was payable in installments of $500.00, semi-annually.

On the day following the sale, Turner went into possession. It was a new house. Several months later he complained to Carey of leaks and other defects. Carey undertook to make the necessary repairs. Turner kept up the payments on both mortgages until December, 1949, when he consulted an attorney about the defective condition of the house, which he concluded had not been properly remedied. On the advice of counsel, he discontinued further payments on the mortgages. Up to this time he had paid to the Bank the total sum of $1,181.42 and to Carey on the second mortgage $1,000.00.

On January 26, 1950, Turner instituted an action against Carey in which he alleged that he had been induced to purchase this house through fraudulent representations, and sought to recover all amounts paid on the purchase price and the expenditures which he had made on the premises, together with punitive damages. He stated that he was ready and willing to reconvey the premises to Carey, asked that the mortgage given to Carey be cancelled, and that he be relieved of the assumption of the Bank's mortgage. The prayer of the complaint was for $10,000.00 "by way of actual and punitive damages; that he be relieved from the payment of any further indebtedness to the defendant and be relieved from the assumption of the mortgage referred to herein; and the costs of this action."

An answer was duly filed by Carey, denying all allegations of fraud and deceit.

On May 12, 1950, the Bank brought an action to foreclose its mortgage, making Turner, as mortgagor and owner of the property, and Carey, as holder of a second mortgage, parties defendant. Carey duly answered and set up the mortgage held by him and asked that same be foreclosed and that he be given judgment against Turner for the amount due. Turner, in his answer, alleged the pendency of his suit against Carey based upon fraud and deceit, and asked that this action and the foreclosure proceedings be consolidated. In an order filed on December 28, 1950, Judge Greneker

refused the motion to consolidate, appointed a receiver to take charge of the property and collect the rents, and referred the foreclosure case to the Master for Spartanburg County. There was no appeal from his order. A reference was held by the Master on July 12, 1951, at which all parties agreed as to the amounts due on the two mortgages. In a report filed on July 16th, the Master recommended that the Bank be given judgment for the amount due on its mortgage and Carey judgment for the amount due on the mortgage held by him, and that both mortgages be foreclosed and the property sold. This report was confirmed in a decree by Judge Littlejohn filed on the same day, to which all parties consented. In this decree Carey was awarded judgment against Turner for $1,117.40, representing the principal and interest due on the second mortgage, together with attorney's fees. The Court directed that the property be sold in August, 1951, and that the proceeds of sale, after payment of the Bank's mortgage and costs, be held subject to the further order of the Court.

On August 1, 1951, Turner vacated the premises. In accordance with the foreclosure decree, the property was sold on sales day in August, 1951, and bid in by Carey's son. It brought only enough to satisfy the Bank's mortgage, costs and taxes. The sale was confirmed on November 1, 1951, and thereafter on January 23, 1952, Carey's judgment against Turner for $1,117.40 was filed in the office of the Clerk of Court.

The suit instituted by Turner against Carey based on fraud and deceit was tried in January, 1952, and resulted in a verdict for Carey, the defendant. On plaintiff's motion, Judge Griffith, the presiding Judge granted a new trial upon the ground that the verdict was against the greater weight of the evidence. On appeal by Carey to this Court, the order granting a new trial was affirmed. *Turner v. Carey,* 223 S. C. 477, 76 S. E. (2d) 671.

A second trial was had in October, 1953, before Judge Lewis. His charge clearly indicates that he regarded the

action as one to recover damages for fraud and deceit. On the question of actual damages, he instructed the jury: "The measure of actual damages would be the difference between the value of the house as it actually was and the value it would have been had it been constructed as represented. The difference between those two values, if any, would be the amount of actual damages that the plaintiff would be entitled to recover." He also submitted to the jury the question of punitive damages.

At the conclusion of his charge, the jury was temporarily excused as required by Section 10-1210 of the 1954 Cumulative Supplement to the Code, and counsel given an opportunity to express any objections to the charge, or to request additional instructions. None of the parties made any objection to the Court's construction of the complaint, or to the measure of damages given in the charge. The jury returned the following verdict: "We, the jury, find for the plaintiff actual damages in the sum of four thousand, two hundred sixty-five dollars and no cents." Thereupon the following occurred:

"Mr. Johnson (counsel for plaintiff) : Your Honor, before you dismiss the jury I would like to have the Court ask the jury if that eliminates the deficiency judgment. We asked for affirmative relief against it, and I want to know if the jury deducted that, or ·if they conclude that the deficiency judgment was still in effect.

"The Court: Mr. Johnson, I can't have the jury pass upon that now. My ruling is that we will have to thrash that out now at a later time."

Carey's counsel made no comment on the foregoing. They merely noted a motion for a new trial, which was later withdrawn. Thereafter Turner's counsel gave notice of a motion "for an order (1) determining whether or not the verdict of the jury for Four Thousand, Two Hundred Sixty-five ($4,265.00) Dollars included or excluded the deficiency judgment in favor of P. A. Carey, Sr., against

S. E. Turner and whether or not that judgment, by the verdict, is eliminated; and (2) to affirmatively declare that the verdict of the jury in this action was based upon fraud and deceit."

The above motion was duly heard by the trial Judge and taken under advisement. In an order filed on December 18, 1953, he directed the Clerk of Court to satisfy Carey's deficiency judgment for $1,117.40 and authorized Turner to enter judgment against Carey for $4,265.00, the amount found by the jury. The trial Judge said that the verdict based on fraud and deceit "vitiated" the entire transaction, including the note and mortgage upon which the deficiency judgment was rendered. It was further stated in this order:

"It is, therefore, my inescapable conclusion that the jury took into consideration the amount of the judgment in arriving at their verdict and the effect of their verdict was to eliminate said judgment.

"The jury having found for the Plaintiff under a charge of fraud and misrepresentation on the part of the Defendant, it is determined that the judgment of the Plaintiff was obtained because of the fraud of the Defendant."

The case is here on appeal by Carey from the foregoing order. In substance, he contends (1) that the foreclosure decree awarding him a deficiency judgment, to which Turner's counsel consented and from which there was no appeal, is final and conclusive and not open to collateral attack, and is *res judicata* on the issue of the validity of the debt represented by his mortgage; (2) that the trial Judge was without authority to review or reverse a judgment rendered by another circuit judge; and (3) that the verdict of the jury was clear and unambiguous and the trial Judge was not empowered to modify or revise same.

It will be helpful in deciding the questions presented to consider the remedies available to a purchaser of land who is induced to enter into a contract of purchase by fraudulent misrepresentations on the part of the

seller. As a general rule, he has a choice of several remedies. "He may, despite the fraud, elect to affirm the contract, retain the property received under it, and bring an action at law for fraud and deceit against the vendor to recover the damages sustained by reason of the fraud or misrepresentations, or, if sued for the agreed price, set off or recoup the damages resulting from the fraud. * * * Instead of bringing an action for damages, a defrauded purchaser may rescind the sale and recover the consideration paid. Rescission for fraud may be asserted as a defense to an action by the vendor for the purchase money or damages * * * The two remedies are inconsistent, the one being based on the continued existence of the sale, the other on its abrogation, and the purchaser cannot in the one form of action secure the relief appropriate to the other." 55 Am. Jur., Vendor and Purchaser, Section 569.

Our decisions are in accord with the foregoing principles. *Ebner v. Haverty Furniture Co.*, 128 S. C. 151, 122 S. E. 578; *Yancey v. Southern Wholesale Lumber Co.*, 133 S. C. 369, 131 S. E. 32; *Ebner v. Haverty Furniture Co.*, 138 S. C. 74, 136 S. E. 19; *Liquid Carbonic Co. v. Coclin*, 161 S. C. 40, 159 S. E. 461.

We have this unusual situation. The complaint seems to have been drawn upon the basis of rescission, but without objection the case was tried as one for the recovery of damages for fraud and deceit. This may have been due to the fact that the foreclosure proceedings, resulting in a sale to a third party, made it impossible for Turner to return the property, a prerequisite to the right of recission. Moreover, when Turner consented to the foreclosure decree, he affirmed the transaction which he formerly sought to rescind.

The trial Judge clearly erred in holding that a verdict for damages in a tort action for fraud and deceit vitiates any contract which a purchaser has been fraudulently induced to enter. It is true that a judgment in an action for rescission or to set aside a transaction for

fraud, would ordinarily have that effect, but the bringing of an action for damages for fraud and deceit is an affirmation of the contract entitling the injured party, if fraud is shown, to recover such damages in the tort action as will compensate him for any loss sustained. It was upon this theory that the instant case was tried.

Nor do we find any ambiguity in the verdict. The measure of actual damages given to the jury was substantially in accord with that laid down in *Liquid Carbonic Co. v. Coclin, supra,* 161 S. C. 40, 159 S. E. 461, to which there has been no exception by any of the parties. Counsel did not request the Court to charge that the jury should consider Carey's deficiency judgment and nothing was said in the charge with reference thereto. There is no basis for the conclusion of the trial Judge "that the jury took into consideration the amount of the (deficiency) judgment in arriving at their verdict and the effect of their verdict was to eliminate said judgment." The presumption is that the amount awarded by the jury was in response to the measure of damages given by the trial Judge.

It may not be amiss to add that under the theory on which the case was tried it would have been improper for the jury to have considered Carey's deficiency judgment.

If the trial Judge felt that the amount of the verdict was inadequate, or against the greater weight of evidence, he was empowered to set it aside and grant a new trial, but he could not "invade the province of the jury or substitute his verdict for theirs." *Stone & Clamp v. Holmes,* 217 S. C. 203, 60 S. E. (2d) 231, 233.

We find no basis for Turner's contention that Carey cannot now complain of the order under review because his counsel remained silent when Turner's attorney requested the Court to interrogate the jury as to the meaning of their verdict and made no objection to the ruling of the Court that "we will have to thrash that out" at a later time. The verdict was clear, definite and free from

uncertainty. There was no room for interpretation. The silence of Carey's counsel can certainly not be considered as an admission that the trial Judge could later modify or revise the jury's verdict.

There are several other questions raised by appellant's exceptions but we find it unnecessary to consider them.

The order under appeal is reversed and Carey's deficiency judgment reinstated.

STUKES, TAYLOR and LEGGE, JJ., concur.

J. WOODROW LEWIS, A. A. J., disqualified.