0760

Brenda L. MAY and John May, Appellants-Respondents v. Evelyn W. HOPKINSON, John M. Hutcherson, d/b/a Mt. Pleasant Exterminating Co., and C. R. Aydlette, Defendants, of whom Evelyn W. Hopkinson is Respondent-Appellant, and C. R. Aydlette is Respondent.

(347 S. E. (2d) 508)

Court of Appeals

*A. Arthur Rosenblum,* Charleston, *for appellants-respondents.*

*G. Trenholm Walker* and *W. Jefferson Leath, Jr.,* Charleston, and *Robert R. Horger,* Orangeburg, *for respondent-appellant.*

Heard March 24, 1986.

Decided July 28, 1986.

Goolsby, Judge:

These appeals involve an action for fraud brought by the plaintiffs Brenda and John May against the defendants Evelyn W. Hopkinson, John M. Hutcherson, doing business as Mt. Pleasant Exterminating Company, and C. R. Aydlette. Hutcherson no longer is in the case, having settled with the Mays during the pendency of these appeals. The dispositive question concerns whether the evidence reasonably supports the conclusion that the defendants Hopkinson and Aydlette defrauded the Mays.

The complaint alleges Hopkinson, Hutcherson, and Aydlette defrauded the Mays by concealing moisture and termite damage to a house purchased by the Mays.[1] Hopkinson allegedly owned the house. Hutcherson allegedly inspected the house for termites and other damage. Aydlette, a real estate agent, allegedly assisted in the sale and closing of the house.

The parties referred the action to the Master of Charleston County pursuant to Section 15-31-10 of the South Carolina Code of Laws (1976), a statute since repealed. *See* 1985 Act No. 100 § 2 at 279. They agreed the master could enter a final judgment but did not agree that an appeal would lie anywhere other than to the Circuit Court. *See* South Carolina Code of Laws § 14-11-90(6) (Cum. Supp. 1985).

Following a three-day trial, the master found that the Mays had established their cause of action by clear, cogent, and convincing evidence. He expressly found that Hopkinson, Hutcherson, and Aydlette had "tacitly agreed among themselves to withhold from the Mays the fact that there was severe ... moisture and termite damage to the house." The master rendered judgment against all three defendants

---

[1] Although the complaint alleges a conspiracy to cheat and defraud, the master ruled in a pretrial order that the complaint alleges only a cause of action for fraud. Neither the plaintiffs nor the defendants appealed the pretrial order. The circuit judge also held that the complaint alleges but a single cause of action and that was "for fraud and deceit." No one appeals this holding.

in the amount of $30,000 actual damages and $60,000 punitive damages.

Each defendant appealed to the Circuit Court.

The Circuit Court found no evidence to support the conclusion that Aydlette and Hutcherson had defrauded the Mays in the sale of Hopkinson's house but did find Hopkinson had defrauded the Mays. It also reduced the actual damages to $25,430 and the punitive damages to $20,000.

Both the Mays and Hopkinson appeal. Aydlette includes additional sustaining grounds.

## I.

### A.

Before addressing the dispositive issue, we feel we should deal first with the more fundamental question raised by the Mays concerning the scope of review that the Circuit Court was required to apply in this instance and, according to the Mays, did not apply.

The Mays maintain that, although the Circuit Court recognized the proper scope of review applicable to its review of the defendants' respective appeals, the Circuit Court nonetheless treated the proceedings as a review of a report submitted by the master rather than as an appeal from the final judgment entered by the master.

Section 14-11-90(6) first appeared in 1979 with the enactment of Act No. 164. *See* 1979 Act No. 164 § 10 at 326-27. It provides:

> Final orders based on reports of masters shall be executed by circuit judges except where the master enters final judgment pursuant to provisions of § 15-31-10. Appeals from final judgments entered by a master pursuant to § 15-31-10 shall be to the [C]ircuit [C]ourt unless otherwise directed by order of the [C]ircuit [C]ourt or by consent of the parties.

Neither Act No. 164 nor any other statute prescribes the scope of review that the Circuit Court is to apply in cases appealed to the Circuit Court from final judgments entered by masters. *Cf.* South Carolina Code of Laws § 18-7-170 (1976) (a statute that authorizes the Circuit Court upon

entertaining an appeal from a judgment obtained in a magistrate's court to "reverse ... for errors of ... fact"); *Vacation Time of Hilton Head Island, Inc. v. Kiwi Corp.*, 280 S. C. 232, 312 S. E. (2d) 20 (Ct. App. 1984) (the Circuit Court on appeal may reverse a judgment rendered in a magistrate's court for errors of fact).

This, of course, is a law case. *See Turner v. Carey*, 227 S. C. 298, 305, 87 S. E. (2d) 871, 874 (1955). Although our research discloses several cases that refer to the scope of review which the Circuit Court is to employ when reviewing a master's or referee's report in a law case [*see Peddler, Inc. v. Rikard*, 266 S. C. 28, 221 S. E. (2d) 115 (1975); *Moore v. Crowley and Associates, Inc.*, 254 S. C. 170, 174 S. E. (2d) 340 (1970); *Sumter Electric Rewinding Co. v. Aiken County S. C. Clays, Inc.*, 230 S. C. 229, 95 S. E. (2d) 259 (1956); *Gregory v. Cohen & Sons*, 50 S. C. 502, 27 S. E. 920 (1897)], none refers to the scope of review the Circuit Court is to use when determining an appeal from a master's or referee's final judgment in a law case.

When the parties permit a master or referee to enter a final judgment in the cause and a party thereafter appeals from the judgment entered by the master or referee, we know of no reason why the scope of review to be applied by the reviewing court should depend upon which appellate court is to determine the appeal. The scope of review, we think, should be the same, irrespective of whether the appeal is to the Circuit Court, the Court of Appeals or the Supreme Court. "It would make the practice uniform and symmetrical, and would conform to the intent of [the] parties in selecting their own mode of trial and [appellate review]." *Meetze v. Charlotte, Columbia & Augusta Railroad Co.*, 23 S. C. 1, 15 (1884) (Simpson, C. J., dissenting).

We therefore hold that, in the absence of a statute prescribing a different scope of review [*see* S. C. Const. Art. V § 7 (1895)], the Circuit Court is to apply the same scope of review that either the Court of Appeals or the Supreme Court would apply when entertaining an appeal from a final judgment entered by a master or referee. Because this case involves an appeal of a law case tried without a jury, the findings of fact of the trial judge will not

be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976); *see also Fox v. Munnerlyn*, 283 S. C. 490, 323 S. E. (2d) 68 (Ct. App. 1984).

We are required in reviewing this appeal, then, to look at the master's findings of fact to determine the underlying question raised by all parties, which is whether any evidence reasonably supports the conclusion that Hopkinson and Aydlette defrauded the Mays.

B.

The master's view of the facts immediately follows.

In early 1981, Hopkinson listed for sale a house she owned at 1129 DeLeisseline Boulevard in Mt. Pleasant, South Carolina. She listed it with Howell & Associates. Hopkinson advised Howell & Associates she wanted only its limited partner Aydlette to handle the transaction. Aydlette lived near Hopkinson.

Several months before she listed her house for sale, Hopkinson learned that its exterior wood had been extensively damaged by moisture. Charles Blanchard, a contractor, looked at the house and advised her of the serious nature of the problem. He also told her that there was probably structural damage present.

Thereafter, Hopkinson had someone caulk, patch, and paint the rotten areas about the exterior of the house. This work effectively covered the rot so that it could not be detected without close inspection.

The Mays learned of Hopkinson's house through Howell & Associates. They visited the house a number of times and walked through and around it. Hopkinson told them that the house had no problems other than a crack in the kitchen vinyl and a fogged window in the den.

In May, 1981, the Mays contracted with Hopkinson to purchase the house for $135,000. Hopkinson agreed to give the Mays a credit for the costs needed to repair the kitchen floor and the den window.

One provision of the contract called for a termite inspection. On more than one occasion before closing, John May requested that Adylette contact C. D. Ledford to perform

the inspection. Aydlette assured John May that Ledford would be obtained for this service. Aydlette, however, did not contact Ledford. Rather, he and Hopkinson got Hutcherson, an operator of an exterminating service in Mt. Pleasant, to inspect the house.

Hutcherson subsequently produced a wood infestation report. It noted the presence of subterranean termites and light fungi and stated the termites had been treated. Although the report also stated there was no other damage, severe sill and joist damage was easily apparent to any inspector.

Aydlette obtained two repair estimates from the same contractor for the den window. One estimate contained the warning that it did not include repairs to "structural damage." The other made no reference to structural damage. At the closing, Aydlette showed the Mays only the estimate that omitted reference to structural damage.

Also at the closing, the Mays were told for the first time that Ledford had not made the wood infestation inspection. Aydlette, in Hopkinson's presence, told the Mays that Ledford had not been available. He assured the Mays, however, that Hutcherson was bonded and credible. Aydlette further assured them that the house was structurally sound and had no problems.

The Mays completed the closing; however, they would not have done so if they had known the true condition of the house.

Soon after the closing, the Mays discovered the rotten weatherboard and the structural damage beneath the house.

Our review of the record convinces us that the master's findings of fact have evidentiary support and we so hold. We note that the master, in making his findings of fact, often resolved conflicts in the evidence in favor of the Mays and generally regarded their evidence more credible. In this instance, the duty to determine the credibility of the evidence, to weigh it, and to resolve conflicts therein reposed in the master and not in the Circuit Court or in the Court of Appeals. 5 Am. Jur. (2d) *Appeal and Error* § 834 at 275-76 (1962).

> In determining whether the master's findings enjoy evidentiary support, our approach was to construe the evidence presented to the master so as to support his

decision wherever it was reasonably possible. In other words, we looked at the evidence in the light most favorable to the Mays, the judgment winners. *See China v. Parrott,* 251 S. C. 329, 162 S. E. (2d) 276 (1968); 5 Am. Jur. (2d) *Appeal and Error* § 885 at 322 (1962). As we scrutinized the record, we considered only the evidence favorable to the Mays and eliminated from our consideration all "evidence contrary thereto or in conflict therewith." 5 Am. Jur. (2d) *Appeal and Error* § 885 at 323 (1962). The Mays were given "the benefit of every favorable inference that may reasonably be drawn from [the] facts." *Id.*

We turn now to the master's conclusion that Hopkinson and Aydlette defrauded the Mays.

Before the Mays could recover for fraud against each defendant, the Mays were required to prove nine familiar elements by clear, cogent, and convincing evidence as to each defendant. *Griggs v. Griggs,* 199 S. C. 295, 19 S. E. (2d) 477 (1942); *Giles v. Lanford & Gibson, Inc.,* 285 S. C. 285, 328 S. E. (2d) 916 (Ct. App. 1985). These elements are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate damages. *M. B. Kahn Construction Co. v. South Carolina National Bank,* 275 S. C. 381, 271 S. E. (2d) 414 (1980); *Lundy v. Palmetto State Life Insurance Co.,* 256 S. C. 506, 183 S. E. (2d) 335 (1971).

The facts found by the master and the inferences that can reasonably be drawn from them establish each of these elements.

In reaching this conclusion, we recognize that the fourth element [*Mylin v. Allen-White Pontiac, Inc.,* 281 S. C. 174, 314 S. E. (2d) 354 (Ct. App. 1984)] and the fifth element [*State v. Carroll,* 277 S. C. 306, 286 S. E. (2d) 382 (1982)] usually must be proved circumstantially. With particular reference to the eighth element, we also recognize that a buyer has the right in South Carolina to rely on a seller of a home to disclose latent defects or hidden conditions which are not discoverable on a reasonable examination of the property and of which the seller has knowledge. *Cohen v. Blessing,* 259 S. C. 400, 192 S. E. (2d) 204 (1972).

We therefore reverse the Circuit Court's order and judgment reversing the master's holding that Aydlette defrauded the Mays and affirm its order and judgment affirming the master's holding that Hopkinson also defrauded them.

## II.

The Mays challenge the Circuit Court's reduction of the punitive damages but not its reduction of the actual damages.

The circuit judge's reduction of the punitive damages was based on his conclusion that the master erred in holding two defendants liable. He reasoned the award of $60,000 was intended to punish three defendants severally and should be accordingly reduced to reflect the liability of a single defendant.

As we read his order, however, the master intended his award of punitive damages of $60,000 to apply jointly. After awarding actual damages and punitive damages in their stated amounts, he wrote, "If I had concluded that Aydlette ... had no responsibility herein, I would still hold that the [Mays] were entitled to damages from Hutcherson and Hopkinson in the above amounts."

We conclude that the circuit judge misread the master's order and therefore erred in reducing the amount of punitive damages awarded by the master. Accordingly, we reinstate the $60,000 award of punitive damages made by the master.

## III.

Aydlette asserts the correctness of the circuit judge's order by argument on several additional sustaining grounds. Our discussion above necessarily has decided most of the issues the additional sustaining grounds raise. We deem Aydlette's failure to argue one additional sustaining ground, that relating to the failure of the master to apportion the punitive damages among the several defendants, as an abandonment of that ground. *Cason v. Gibson*, 217 S. C. 500, 61 S. E. (2d) 58 (1950).

## A.

Aydlette argues that Mays suffered no damages because he offered to buy the house from them at the contract price. A purchaser of real estate who is induced by fraud to buy may affirm the contract, retain the property received under the contract, and sue at law for fraud and deceit to recover the damages sustained by reason of the fraud. *Turner v. Carey*, 227 S. C. 298, 87 S. E. (2d) 871 (1955); *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge*, 279 S. C. 468, 309 S. E. (2d) 763 (Ct. App. 1983). The Mays were entitled to affirm the contract and seek damages.

Aydlette further argues that there is no competent evidence to prove any damages whatsoever. As noted earlier, the Circuit Court modified the master's award of actual damages and assessed the amount thereof at $25,430.

At trial, there was testimony that the Mays had already spent money on extensive repairs and that the repairs were not complete. The exact repairs to be completed could not be determined because removal of some defective wood was expected to reveal additional problems. A contractor's repair estimate projected the cost of repair as $25,430.

In an action for fraud by a purchaser of property, the measure of damages ordinarily is the difference between the fair market value of the property at the time of its purchase and the value that the property would have had had the representations about the property been true. *See Starkey v. Bell*, 281 S. C. 308, 315 S. E. (2d) 153 (Ct. App. 1984); 37 C.J.S. *Fraud* § 143 at 477 (1943). The purchaser may not in addition to the difference between the property's fair market value and its represented value recover the expenditures necessary to make the property conform to the representations. *Starkey v. Bell*, 281 S. C. at 314, 315 S. E. (2d) at 156. The reasonable cost of repair is, however, competent and probative evidence on the issue of damages, though it need not be determinative. *Reid v. Harbison Development Corp.*, 285 S. C. 557, 330 S. E. (2d) 532 (Ct. App. 1985), *rev'd on other grounds*, 345 S. E. (2d) 492 (S. C. 1986); *Orkin Exterminating Co. v. Bryan*, 163 Ga. App. 804, 294 S. E. (2d) 683 (1982); *see also Aaron v. Hampton Motors, Inc.*, 240 S. C. 26, 124 S. E. (2d) 585 (1962).

Although there is no direct evidence in this case of the fair market value of Hopkinson's house at the time of purchase and the contract price is the only evidence of what the house's value would have been if it had been as represented, the evidence does show that the reasonable cost of repairing the damage at the time the Mays discovered it was $25,430. This evidence is sufficient support for the amount of actual damages awarded by the master and modified by the circuit judge. *Orkin Exterminating Co. v. Bryan, supra.*

We therefore affirm the judgment of $25,430 actual damages.

### B.

Aydlette further argues that punitive damages should not have been assessed against him because there was no showing of his conscious wrongdoing. This point must be resolved against him because of our conclusion that the evidence supports the finding that he knew of the latent defects in the house and engaged in fraud. *Carter v. Boyd Construction Co.*, 255 S. C. 274, 178 S. E. (2d) 536 (1971).

Affirmed in part and reversed in part.

SHAW and CURETON, JJ., concur.